UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 20-cv-21223-BLOOM/Louis

WISLINE DORLEANT,

    Plaintiff,

v.

ADVANTAGE ACADEMY OF
MIAMI, INC. d/b/a PALM GLADES
PREPARATORY ACADEMY,

    Defendant.
_____/

**ORDER**

**THIS CAUSE** is before the Court upon Defendant Advantage Academy of Miami, Inc. d/b/a Palm Glades Preparatory Academy's ("Defendant") Motion to Dismiss Plaintiff's Amended Complaint and Motion to Strike Irrelevant Factual Allegations, ECF No. [21] ("Motion"). Plaintiff Wisline Dorleant ("Plaintiff") filed a Response in Opposition, ECF No. [22] ("Response"), to which Defendant filed a Reply, ECF No. [23] ("Reply"). The Court has carefully reviewed the Motion, all opposing and supporting submissions, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion is denied.

    **I. BACKGROUND**

Plaintiff originally initiated this action against Defendant on February 5, 2020, in the Eleventh Judicial Circuit in and for Miami-Dade County, Florida. ECF No. [1-2] at 3-12. Defendant removed this action to federal court on March 20, 2020. ECF No. [1]. Plaintiff thereafter filed an Amended Complaint on June 16, 2020, which asserts five counts for relief: Count I – National Origin Discrimination in Violation of Title VII of the Civil Rights Act; Count II – Racial Discrimination in Violation of Title VII; Count III – National Origin Discrimination in Violation

of the Florida Civil Rights Act ("FCRA"); Count IV – Racial Discrimination in Violation of the FCRA; and Count V – Retaliation in Violation of the FCRA. *See generally* ECF No. [20].

The Amended Complaint alleges the following facts: Plaintiff is Black female of Haitian National Origin who commenced her employment with Defendant as a science teacher on or about August 14, 2017. *Id.* ¶¶ 14-15. Around November 2017, Plaintiff reported to the Dean of Instruction, Ms. Darlene Escudero ("Ms. Escudero"), that a white male student from Plaintiff's class called her a "Black Monkey." *Id.* ¶ 18. Ms. Escudero disregarded the complaint by shrugging her shoulders and laughing at the incident, and instructed Plaintiff to go back to teaching her class. *Id.* ¶ 19. Upon returning to her classroom, the white male student continued to be disruptive, and a security guard "walked by and reported what he saw without Plaintiff requesting his assistance." *Id.* ¶ 20. Ms. Escudero then pulled Plaintiff from her classroom and scolded her for informing the security guard of the incident. *Id.* ¶ 21.

Because of Ms. Escudero's unwillingness to address the incident, Plaintiff requested to meet with the principal, Ms. Archanlena Coats ("Principal Coats"). *Id.* ¶ 22. At the meeting, Plaintiff discussed the student's racial comment and Ms. Escudero's unwillingness to address the issue, to which Ms. Escudero stated she was unaware that the comment was a racial slur and apologized to Plaintiff. *Id.* ¶¶ 23-24. "Throughout the rest of the year, Plaintiff experienced more mistreatment at the hands of Ms. Escudero." *Id.* ¶ 25. "Specifically, Ms. Escudero spoke in a condescending and demeaning manner to Plaintiff on a regular basis. Ms. Escudero did not speak in this manner to non-black employees." *Id.* ¶ 26. Plaintiff renewed her employment contract for the following year. *Id.* ¶¶ 27-28.

During the summer of 2018, Dr. Laura Ferreira Vesga ("Dr. Vesga") replaced Ms. Coats as Principal, and Ms. Escudero became Vice Principal. *Id.* ¶ 29. "Plaintiff was subjected to derogatory comments, harassment, and negative treatment by both Ms. Escudero and Dr. Vesga."

*Id.* ¶ 30. "Specifically, Dr. Vesga often spoke in a condescending and demeaning manner to Plaintiff in meetings and she would often publicly reprimand her in front of other co-workers." *Id.* ¶ 31. "Furthermore, Escudero would alienate Plaintiff at open houses, make fun of Plaintiff's accent, and give her additional workload." *Id.* ¶ 32.

For example, in the second month of the school year, Plaintiff noticed that more students were added to her class roster, making the number of students exceed the maximum student-teacher ratio under Florida law. *Id.* ¶¶ 33-35. Likewise, Plaintiff noticed that a student with special needs was added to her classroom when she was not qualified to teach special needs students. *Id.* ¶¶ 36, 39-40. Plaintiff complained to her direct supervisor and Science Coach, Ms. Estevez, and to Ms. Escudero about these issues. *Id.* ¶¶ 37-39. "Ms. Escudero disregarded Plaintiff's complaints and told her she needed to 'deal with it'. Plaintiff was not offered any assistance or guidance on how to handle the added work." *Id.* ¶ 41.

On or around October 25, 2018, Dr. Vesga emailed Plaintiff requesting to meet. *Id.* ¶ 42. "During this meeting, Ms. Escudero was present. Dr. Vesga proceeded to tell Plaintiff, 'You don't fit here, and you should go teach where people look more like you.'" *Id.* ¶ 43. "She then verbally gave her a short list of schools that Plaintiff could apply to such as Miami Carol City Senior High (80% of student body is Black) and Cutler Bay Middle School (40% of student body is Black)." *Id.* Plaintiff was thereafter terminated. *Id.* ¶ 44. "When the Plaintiff asked for a legitimate and valid reason for her termination, she was told that she just didn't 'fit in.'" *Id.* "Defendant's justification(s) for its treatment of Plaintiff, if any, are a mere pretext for unlawful discrimination and retaliation." *Id.* ¶ 45. "If, however, the reason(s) proffered by Defendant are found to be with merit, Plaintiff's race, national origin, and/or complaints of discrimination and violations of law were motivating factor(s) in the decision for the adverse employment action(s)." *Id.* ¶ 46.

Defendant now files the instant Motion seeking to dismiss Count V of the Amended Complaint as procedurally barred and to strike certain allegations contained therein. ECF No. [21]. Plaintiff, on the other hand, takes the opposing position, arguing that her retaliation claim is not procedurally barred and that the allegations Defendant seeks to strike are related to her claims. ECF No. [22]. The Motion is ripe for this Court's review.

## II. LEGAL STANDARD

### A. Motion to Dismiss

A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). In the same vein, a complaint may not rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. These elements are required to survive a motion brought under Rule 12(b)(6) that requests dismissal for failure to state a claim upon which relief can be granted.

When reviewing a motion under Rule 12(b)(6), a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration All.*, 304 F.3d 1076, 1084 (11th Cir. 2002). However, this tenet does not apply to legal conclusions, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678; *Thaeter v. Palm Beach Cty. Sheriff's Office*, 449 F.3d

1342, 1352 (11th Cir. 2006). Moreover, "courts may infer from the factual allegations in the complaint 'obvious alternative explanations,' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 682).

A court, in considering a Rule 12(b)(6) motion, "may consider only the complaint itself and any documents referred to in the complaint which are central to the claims." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (citing *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997)); *see also Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 n.3 (11th Cir. 2005) ("[A] document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity." (citing *Horsley v. Feldt*, 304 F.3d 1125, 1135 (11th Cir. 2002))).

### B. Motion to Strike

Rule 12(f) of the Federal Rules of Civil Procedure permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter," granting courts broad discretion in making this determination. Fed. R. Civ. P. 12(f); *see also Morrison v. Exec. Aircraft Refinishing, Inc.*, 434 F. Supp. 2d 1314, 1318-19 (S.D. Fla. 2005); *Williams v. Eckerd Family Youth Alt.*, 908 F. Supp. 908, 910 (M.D. Fla. 1995). Under Rule 12(f), "[a] motion to strike will usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." *Harty v. SRA/Palm Trails Plaza, LLC*, 755 F. Supp. 2d 1215, 1218 (S.D. Fla. 2010) (internal quotation marks and citation omitted); *see also BB In Tech. Co. v. JAF, LLC*, 242 F.R.D. 632, 641 (S.D. Fla. 2007) (same); *Home Mgmt. Sols., Inc. v. Prescient, Inc.*, No. 07-20608-CIV, 2007 WL 2412834, at *1 (S.D. Fla. Aug. 21, 2007) (same); *Action Nissan, Inc. v. Hyundai Motor Am.*, 617 F. Supp. 2d 1177, 1187 (M.D. Fla. 2008) (same). Courts have broad discretion in considering a motion to strike under Federal Rule of Civil

5

Procedure 12(f). *See, e.g.*, *Sakolsky v. Rubin Mem'l Chapel, LLC*, No. 07-80354-CIV, 2007 WL 3197530, at *2 (S.D. Fla. Oct. 26, 2007). Irrespective of the Court's broad discretion, this ability to strike is considered to be drastic and is often disfavored. *Thompson v. Kindred Nursing Ctrs. E., LLC*, 211 F. Supp. 2d 1345, 1348 (M.D. Fla. 2002) (quoting *Augustus v. Bd. of Pub. Instruction of Escambia Cty., Fla.*, 306 F.2d 862, 868 (5th Cir. 1962));[1] *Fabing v. Lakeland Reg'l Med. Ctr., Inc.*, No. 8:12-cv-2624-T-33MAP, 2013 WL 593842, at *2 n.2 (M.D. Fla. Feb. 15, 2013) (calling Rule 12(f) a "draconian sanction").

### III. DISCUSSION

In the instant Motion, Defendant argues that Count V of the Amended Complaint should be dismissed because Plaintiff's retaliation count is procedurally barred and fails to state a claim. Moreover, the Motion argues that the Amended Complaint's allegations 33-41 should be stricken as immaterial and prejudicial to Defendant.

**A. Procedural Bar**

First, regarding the argument that Plaintiff's retaliation claim is procedurally barred, Defendant relies on the Charge of Discrimination, which it attaches to its Motion. ECF No. [21-1] ("Charge").[2] In particular, Defendant argues that the Charge fails to check the box for retaliation, and only checks the boxes for discrimination based on race and national origin. Further, Defendant contends that Plaintiff's Charge fails to specify any actions that could support a claim for retaliation. As such, Defendant maintains that Plaintiff's retaliation claim is procedurally barred

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Court of Appeals for the Eleventh Circuit adopted all decisions of the Court of Appeals for the Fifth Circuit that were rendered prior to October 1, 1981.

[2] "[A] document outside the four corners of the complaint may [] be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity." *Maxcess, Inc.*, 433 F.3d at 1340 n.3 (citing *Horsley*, 304 F.3d at 1135). Plaintiff here does not dispute the authenticity of the Charge of Discrimination, which is central to the claims raised in her Amended Complaint. Thus, the Court may properly consider this document in resolving the instant Motion.

because she failed to exhaust her administrative remedies with the Equal Employment Opportunity Commission (EEOC). Plaintiff, however, argues that her retaliation claim is not procedurally barred because it reasonably grew out of or was related to her claims of discrimination described in the Charge.

> In order to prove retaliation under Title VII,[3] a "plaintiff must show that (1) she engaged in statutorily protected activity, (2) an adverse employment action occurred, and (3) the adverse action was causally related to the plaintiff's protected activities." *Little v. United Technologies, Carrier Transicold Div.*, 103 F.3d 956, 959 (11th Cir. 1997). Prior to filing a Title VII action, however, a plaintiff first must file a charge of discrimination with the EEOC. *See Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 460 (5th Cir. 1970).
>
> The purpose of this exhaustion requirement "is that the [EEOC] should have the first opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts." *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 929 (11th Cir. 1983); *see also Wu v. Thomas*, 863 F.2d 1543, 1548 (11th Cir. 1989) ("The purpose of the filing requirement is to insure that the settlement of grievances be first attempted through the office of the EEOC.") (internal quotation and citation omitted). This Court further has noted that judicial claims are allowed if they "amplify, clarify, or more clearly focus" the allegations in the EEOC complaint, but has cautioned that allegations of new acts of discrimination are inappropriate. *Wu*, 863 F.2d at 1547 (citation omitted).
>
> In light of the purpose of the EEOC exhaustion requirement, we have held that a "plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Alexander v. Fulton County, Ga.*, 207 F.3d 1303, 1332 (11th Cir. 2000) (internal quotation and citation omitted); *Sanchez*, 431 F.2d at 466 (noting that the allegations in a judicial complaint filed pursuant to Title VII may encompass any kind of discrimination like or related to the allegations contained in the charge). Courts are nonetheless "extremely reluctant to allow procedural technicalities to bar claims brought under [Title VII]." *Sanchez*, 431 F.2d at 460-61. As such, this Court has noted that "'the scope of an EEOC complaint should not be strictly interpreted'" *Id.* at 465 (citation omitted).

*Gregory v. Ga. Dep't of Human Res.*, 355 F.3d 1277, 1279-80 (11th Cir. 2004).

The Court agrees with Plaintiff that *Gregory* is directly applicable here. Although decided at the summary judgment stage, the Eleventh Circuit's reasoning regarding a potential procedural

---

[3] "The Florida Civil Rights Act is patterned after Title VII, and therefore federal case law regarding Title VII is applicable." *Natson v. Eckerd Corp.*, 885 So. 2d 945, 947 (Fla. 4th DCA 2004) (quoting *Castleberry v. Edward M. Chadbourne, Inc.*, 810 So. 2d 1028, 1030 n.3 (Fla. 1st DCA 2002)).

bar to a retaliation claim made under similar facts to the instant action is instructive. As is the case here, the plaintiff in *Gregory* failed to check the box for retaliation on her charge of discrimination. *Id.* at 1279. Additionally, in the plaintiff's description of the discrimination in *Gregory*, she stated that she had been terminated without being given a legitimate reason for the termination, and that she believed she was discriminated against on the basis of her race and sex. *Id.* "Moreover, she asserted that white and male doctors (1) were not required to provide doctor's excuses when they used sick leave, (2) did not have negative performance memoranda placed in their records for arbitrary reasons, and (3) were not subjected to unwarranted termination." *Id.* Upon filing her lawsuit, the plaintiff alleged, in part, that after she "complained to the administration of Defendant Fuller's racially discriminatory treatment of Plaintiff, Defendants treated Plaintiff worse and even ended up terminating Plaintiff's employment. Plaintiff's termination was motivated by her race and/or in retaliation for complaining of Defendant Fuller's race discrimination against her." *Id.*

In affirming the district court's denial of the defendant's motion for summary judgment, the Eleventh Circuit explained that the relevant inquiry was whether the complaint was like or related to, or grew out of, the allegations contained in the plaintiff's EEOC charge, which was founded upon her ultimate termination. *Id.* at 1280. Although the plaintiff's charge stated that she believed she was terminated because of her race and sex, the Eleventh Circuit noted that there could be various non-legitimate reasons driving an employee's ultimate termination. *Id.* Indeed, as the Circuit Court explained, "it could be that race and sex were the only reasons, as she initially believed, why she was terminated. It could also be, however, that Dr. Gregory was terminated *in retaliation for* having complained about Dr. Fuller's disparate treatment of her, *inter alia*, during physician scheduling and patient assignments." *Id.* Ultimately, the *Gregory* court held that "[t]he facts alleged in [the plaintiff's] EEOC charge could have reasonably been extended to encompass

a claim for retaliation because they were inextricably intertwined with her complaints of race and sex discrimination." *Id.*

Here, Plaintiff's Charge states:

> I am a female African American of Haitian National Origin. I had been employed by the [Defendant] as an educator and have not been the subject of any major disciplinary incidents for performance or violations of [Defendant's] rules and regulations.
> On October 25, 2018, I was summoned to the office of the Principal, Laura Ferelia, (Hispanic) and I was informed that I was terminated. When I asked why I was being terminated, the Principal informed me, that I was not a good fit for the school and that I needed to apply for a position in a school with people who look more like me (African American). Principal Escudero offered to provide me with a work reference if I required one.
> I believe, I was terminated because of my Race (African American[)] and my National Origin (Haitian) in violation of the Civil Rights Act of 1964, as amended.

ECF No. [21-1]. Further, as Defendant notes, Plaintiff's Charge did not check the box for retaliation. *Id.*

Nevertheless, like the EEOC charge in *Gregory*, Plaintiff's Charge here is premised upon the ultimate act of her termination, which she believed was motivated by her race and national origin. The Amended Complaint sets forth allegations supporting Plaintiff's retaliation claim that are inextricably intertwined with her claims for race and national origin discrimination. In particular, the Amended Complaint notes that Plaintiff was subjected to derogatory comments, disparate treatment, and increased workloads, which she believes were based upon her race and national origin, and that she made several complaints about this disparate treatment to Ms. Escudero and Dr. Vesga. ECF No. [20] ¶¶ 30-32, 93-94. Plaintiff's ultimate termination could have been motivated solely by her race and national origin, but "[i]t could also be [that Plaintiff] . . . was terminated *in retaliation for* having complained about [her] disparate treatment[.]" *Gregory*, 355 F.3d at 1280. Consistent with the reasoning articulated in *Gregory*, this

9

Court will not strictly construe the Charge to bar Plaintiff's retaliation claim here on a procedural technicality. *Id.* Therefore, Defendant's Motion is denied as to the procedural bar.

### B. Failure to State a Claim

Defendant further argues that Plaintiff's retaliation claim in Count V of the Amended Complaint should be dismissed because it fails to state a claim. Specifically, Defendant contends that Plaintiff fails to allege that she engaged in statutorily protected activity—a required element of a retaliation claim. The Court, however, agrees with Plaintiff that the general allegations in the Amended Complaint, combined with the allegations set forth in Count V, sufficiently present a claim for retaliation at the pleading stage.[4] To state a retaliation claim, "plaintiff must show that (1) she engaged in statutorily protected activity, (2) an adverse employment action occurred, and (3) the adverse action was causally related to the plaintiff's protected activities." *Gregory*, 355 F.3d at 1279.

The Amended Complaint generally alleges that "Plaintiff was subjected to derogatory comments, harassment, and negative treatment by both Ms. Escudero and Dr. Vesga." ECF No. [20] ¶ 30. "Specifically, Dr. Vesga often spoke in a condescending and demeaning manner to Plaintiff in meetings and she would often publicly reprimand her in front of other co-workers." *Id.* ¶ 31. "Furthermore, Escudero would alienate Plaintiff at open houses, make fun of Plaintiff's accent, and give her additional workload." *Id.* ¶ 32. In addition to these general allegations detailing the discriminatory conduct Plaintiff suffered, Count V also alleges that Plaintiff made several complaints to Ms. Escudero and Dr. Vesga about the disparate treatment she was subjected to, and these complaints were protected activity. *Id.* ¶¶ 93-94. Moreover, Plaintiff states that Defendant retaliated against her for exercising her protected rights, that Defendant's alleged

---

[4] Generally, courts must accept the plaintiff's allegations as true and evaluate all plausible inferences in the plaintiff's favor. *Miccosukee Tribe of Indians of Fla.*, 304 F.3d at 1084.

reasons terminating Plaintiff were pretextual, and that, if Defendant's proffered reasons are meritorious, Plaintiff's complaints of discrimination and disparate treatment were motivating factors in Plaintiff's ultimate termination. *Id.* ¶¶ 95, 99-100.

Viewing these allegations in the light most favorable to Plaintiff, the Court concludes that the allegations in the Amended Complaint sufficiently state a claim for retaliation. Plaintiff's allegations support that Plaintiff suffered discriminatory treatment based on race and national origin, she complained about this discrimination, and she was terminated, at least in part, due to Plaintiff's complaints. These allegations are sufficient to support Plaintiff's retaliation claim. *See Olson v. Dex Imaging, Inc.*, 63 F. Supp. 3d 1353, 1363 (M.D. Fla. 2014) ("Plaintiff's Amended Complaint alleges that she engaged in multiple instances of protected activity including complaining about discriminatory acts against her based on her gender and disability a few days before she was constructively discharged."). Accordingly, Defendant's Motion is denied on this basis.

### C. Motion to Strike

Lastly, Defendant argues that allegations 33-41 of the Amended Complaint should be stricken as immaterial and prejudicial to Defendant. The allegations at issue detail how Plaintiff was assigned more students to her classroom than is allowed under Florida law and was assigned a special needs student to her classroom when she was unqualified to teach special needs students. Plaintiff, on the other hand, responds that these allegations are directly related to her claims of discrimination and retaliation because they demonstrate how Plaintiff was subject to disparate treatment and increased workloads by Ms. Escudero and Dr. Vesga.

As explained above, "[a] motion to strike will usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." *Harty*, 755 F. Supp. 2d at 1218 (internal quotation marks and citation omitted). Here, Plaintiff's Amended

Complaint clearly alleges that part of the discriminatory and disparate treatment Plaintiff was subjected to was increased workloads. ECF No. [20] ¶ 32. Allegations about Defendant increasing the number of students assigned to Plaintiff's classroom beyond the maximum number of students allowed by Florida law and assigning special needs students to her classroom despite Plaintiff's lack of qualifications to teach special needs students are not the types of allegations that "have no possible relation to the controversy." Thus, the Court will not employ this "drastic" remedy and strike these allegations at this juncture. *Thompson*, 211 F. Supp. 2d at 1348. As such, Defendant's Motion to strike allegations 33-41 is denied.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Defendant's Motion, **ECF No. [21]**, is **DENIED.**

**DONE AND ORDERED** in Chambers at Miami, Florida, on October 13, 2020.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record

Wisline Dorleant
1270 S.E. 28th Ct.
Homestead, Florida 33035
wisline_d@icloud.com